H. C. LAWRENCE *v.* E. S. MIDDLETON, TAX COLLECTOR.

[60 South. 130]

PUBLIC GARAGE.   *Privilege tax.   Laws 1910, chapter 96.*

> Where a person is engaged in the business of running a public garage, in which automobiles are stored without charge, to be repaired by him for a fee, it is immaterial whether the garage is run in connection or formed part of the repair shop, or the repair shop was an incident to the garage, and in such case he is subject to the tax imposed by Laws 1910, chapter 96, on each public garage.

APPEAL from the circuit court of Hinds county.

HON. W. A. HENRY, Judge.

Suit by H. C. Lawrence against E. S. Middleton, tax collector.   From a judgment for defendant, plaintiff appeals.

Appellant was plaintiff in the court below, and appellee defendant.   Suit was brought to recover the amount of the privilege license alleged to have been erroneously levied and collected of plaintiff for conducting a garage. The law under which the tax was levied is found in chapter 96, Laws 1910, and is as follows: "Automobile, Garage or Dealers.   On each dealer or corporation or firm of dealers, dealing in automobiles, or on each public garage in cities of over five thousand inhabitants, $50.00." It was the contention of the appellant that he did not operate a public garage, but simply a repair shop, since he did not charge for the storage of automobiles, but simply permitted his customers to leave their cars in his place of business when convenient, without charging any fee.   The case was tried before the judge on an agreed state of facts set out in the opinion.   From an adverse decision, plaintiff appeals.

*Jas. R. McDowell,* for appellant.

Our statute does not define a public garage but clearly it was not its purpose to demand a license of one who

was not engaged in the vocation of conducting a public garage. Lawrence is not conducting a public garage. He does not perform a single function of a garage keeper, and he does not derive a cent's profit as such. Suppose a mercantile firm, or a newspaper gives away an automobile for a prize to subscribers, or to a certain lucky subscriber or patron, or to one who obtains a number of subscriptions. Would such merchant or editor be a dealer in automobiles? Certainly not.

Section 658 of Babbitt's Automobile Law treats the repair of motor vehicles separately. He treats a garage keeper as one thing and a repair man as another. Sometimes the two are combined. For instance, the author says, "More frequently than not, in conjunction with the garage there is a repair shop for motor vehicles." It is thus clear that he considers the two lines of business entirely distinct. There is no definition in any of the books where a garage means a repair shop and nowhere is a garage keeper defined to be one who does not charge for storage. See also sections 640-641 of the same text book.

Huddy, in his work on Automobile Law, pages 82 and 83, says that a garage "is a modern substitute for the ancient livery stable," and that is what seems to have confused the sheriff.

The modern livery stable stores horses and vehicles for hire. So does the modern garage. The modern livery stable keeps carriages for hire and pays a privilege license in this state for so doing. The appellant keeps an automobile for hire and pays a privilege tax for so doing; there the analogy ceases. The automobile repair shop is analagous to a blacksmith shop which repairs vehicles and shoes horses. All appellant does for hire is to repair motor vehicles. Mr. Huddy says: "One who receives the property of another for the purpose of taking care of it, is, in law, termed a bailee. The keeper of a garage is a bailee for hire. With him is

deposited property—the automobile—for safe-keeping, for which he is paid a consideration."

Webster's Unabridged Dictionary defines a garage to be: "A place for the housing of automobiles."

So far as I am able to find there is nothing in the books to connect a public repair shop with a garage. The two are separate and distinct occupations, though one might conduct both just as one person might conduct a livery stable and blacksmith shop, or a carriage repair shop.

By reference to the American Digest, I find under the head "Garage," "See Warehouseman." The keeper of a garage is treated in the books as a warehouseman and a warehouseman is a bailee for hire.

In the Noxubee county case, referred to by Hon. CARL FOX, in his opinion, *supra*, the owner of the blacksmith shop fixed a monthly charge of fifteen dollars for keeping a machine in repair, cleaning it, etc. Certainly that is a much stronger case in favor of the payment of a garage tax than in the case of Lawrence who makes no charge whatever for keeping them in repair. He makes a separate charge for each item of repair work done and only does the work when requested and contracted for. If any one who takes advantage of Lawrence's offer to let him store his car under his shed free does not wish any repair work done, Lawrence will not do it. There is no obligation that he shall have repair work done, but there is an understanding that if such work is to be done, then Lawrence expects the preference. His prices, however, are a matter of contract and the owner does not have to contract with him.

*Williamson & Wells*, for appellee.

A garage is also defined by the Standard Dictionary to be "A building as a stable or shed, for the storage of automobiles and other horseless vehicles."

To these definitions may be added a now very common feature, namely, that they are places where motor vehicles are kept for hire, and also, sometimes for sale.

In *Smith* v. *O'Brien*, 94 N. Y. Supp. 673, the court says, "The garage is the modern substitute for the the ancient livery stable."

In *Diocese* v. *Trenton*, 70 Atl. 606-611, it is said: "These garages occupy with reference to automobiles, the same place that stables do with regard to horses."

Under the agreed statement of facts the appellant in this case is undoubtedly maintaining a public garage. The fact that he does not have any fixed charge which is made to his customers for the storage of automobiles, does not alter the case. It is shown that when the public takes advantage of his storage room for their automobiles, they are informed that the appellant is to be allowed to make all repairs on the machines, and this, not at a fixed price or schedule, but upon terms to be agreed upon in each case.

This is manifestly a mere subterfuge in the effort to evade the payment of the privilege tax for keeping the garage. It is shown that the appellant keeps a "public" repair shop and storage room, where the public have the right to store their machines, upon the condition tacitly entered into, to have all repairs to the machines done by the appellant, and he no doubt reaps his reward when the repairs are made.

It might as well be said that a man is not keeping a livery stable, when he maintains a building adapted to the purposes of a livery stable, and invites the public to put their horses in his stable, where they will be fully protected and cared for, curried and rubbed, and every other necessary thing done for them except to be fed, upon notice duly served upon the customer that if the horse should get hungry and need to be fed, the stable keeper will expect to be given the job of feeding the horse at such price as may be agreed upon. The agreed

statement of facts shows that the appellant was not only keeping a public garage for hire to be paid indirectly for the storage of the machines of the public, but, he also, in the same building and public place, kept an automobile, for the purpose of hire to the public, and the public generally would be supposed to know that any one of them could at any time apply to the appellant and secure the service of a public automobile, just as the public would apply to a livery stable for the use of a public carriage, kept for hire. It might as well be said that a stable keeper; who kept a regularly equipped livery stable for the housing and care of horses, was not keeping a livery stable, because of the fact that he kept only one carriage and pair of horses with which to serve his customers. If the subterfuge attempted in this case is to be permitted, it will be impossible for the tax collector to collect the tax imposed upon the keepers of garages because it affords too easy a way for the keepers to avoid the payment of the tax.

We respectfully submit that the judgment of the circuit court below was correct and should be affirmed.

COOK, J., delivered the opinion of the court.

This is an appeal from the circuit court of Hinds county, holding appellant liable for the privilege on a "public garage," under the following statements of facts, viz:

"Agreed Statement of Facts. H. C. Lawrence rents a storehouse in the city of Jackson, Hinds county, Missisisippi, where he conducts a public automobile repair shop, and in his building also stores the automobiles of his customers without making any charge for storage, but informs them that he expects to do their repair work when needed. The price charged for repair work is a matter of agreement in each case. The building will accommodate eight or ten cars, which number he usually has on hand, some of which he is working on. He also keeps in this building an automobile for hire to

the public, and has paid the privilege license of ten dollars on said car so kept for hire, as required by chapter 96, Laws of 1910. He is not engaged in the sale of automobiles, and is not a dealer. On this state of facts the sheriff demanded and collected a privilege tax of fifty dollars provided by said law of 1910 on a public garage, and fifty dollars· damages for failure to pay ·same within the time required by law. The payment was made by Lawrence under protest.''

Babbitt on Motor Vehicles, section 628, gives some of the definitions of a garage, among the number the definition given in the Technological and Scientific Dictionary, by Goodchild & Tweeny, viz.: ''Depot for the storage, or storage and repair, of motor cars.'' The same author says: ''The practice is daily becoming more common for *the garage keeper* to be the general repair man for the owner of the machine intrusted to his care. More frequently than not, in conjunction with the garage, there is a general repair shop for motor vehicles.'' Section 658.

Appellant was engaged in the business of running a garage, in which automobiles were stored for repair; and whether the garage was run in connection or formed a part of the repair shop, or the repair shop was an incident to the garage, is unimportant. There was a public garage; and while there was no fee charged for the storage, yet charges were made for the repair of vehicles stored, and vehicles were stored for repair.

The privilege was taxed against garages open to the public, and under the facts appellant was the owner of a depot for the storage and repair of automobiles for the use of the public.

*Affirmed.*